CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 13 2011

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| ROBERT PHAROAH HOWARD, | ) |
| | ) |
| Plaintiff, | ) Case No. 7:11CV00103 |
| | ) |
| v. | ) |
| | ) MEMORANDUM OPINION |
| | ) |
| TONYA PHILLIPS, ET AL., | ) By: Glen E. Conrad |
| | ) Chief United States District Judge |
| Defendants. | ) |

Plaintiff Robert Pharoah Howard, a Virginia inmate proceeding pro se, has filed this civil rights action, pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. In his complaint, Howard alleges that the defendants, officials at Red Onion State Prison, have violated his constitutional rights by damaging his television set and refusing to fix it, allowing him to proceed with a hunger strike despite knowing the risk to his health, using excessive force against him, tampering with his outgoing legal mail, placing him in ambulatory restraints as punishment, and limiting his ability to utilize the prison grievance procedure. Upon review of the record, the court finds that the complaint must be dismissed.

I

After Howard submitted his complaint in this action, the court issued a conditional filing order, requiring him, among other things, to submit an amended complaint to take the place of

his initial complaint. The court notified Howard that the initial complaint made "no clear statement of his claims or their necessary elements" and that its format was not acceptable.[1]

Recognizing plaintiff's pro se status, the court then instructed him plainly about how to correct the deficiencies as he prepared his amended complaint:

> **[P]laintiff MUST file an amended complaint within twenty (20) days** from entry of this order. **The amended complaint will take the place of plaintiff's original complaint and must:** (a) be clearly entitled "Amended Complaint," include the assigned case number and the names of all of the defendants, in the heading, and be signed under penalty of perjury; (b) must have one inch of blank space on all sides of the text, have writing on one side of the paper only, and have pages numbered in the top right hand corner, chronologically; and (c) **must follow the format stated in Federal Rule of Civil Procedure 10.**[2] In a claim under 42 U.S.C. § 1983, each claim must also clearly state the individual state official (defendant) against whom the claim is being brought, state facts concerning

---

[1] The court described the deficiencies of the initial complaint as follows:

> a stack of unnumbered pages, with text from top to bottom and within 1/8 of an inch of the sides of the paper. Rather than stating individual claims, the submissions offer a rambling narrative that jumps from incident to incident and back again. It is impossible to follow in logical fashion or to know what claims plaintiff wishes to bring against which defendants.

(Order 2, Mar. 14, 2011.)

[2] In the March 14, 2011 order, the court cited Rule 10 in its entirety for the plaintiff's benefit:

> (a) Caption; Names of Parties. Every pleading must have a caption with the court's name, a title, a file number, and a Rule 7(a) designation. The title of the complaint must name all the parties; the title of other pleadings, after naming the first party on each side, may refer generally to other parties.
>
> (b) Paragraphs; Separate Statements. A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence--and each defense other than a denial--must be stated in a separate count or defense.
>
> (c) Adoption by Reference; Exhibits. A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.

Fed. R. Civ. P. 10.

specific conduct by each defendant in violation of plaintiff's rights, and state facts concerning the manner in which plaintiff was injured as a result of the defendant's conduct.

(Order 2-3, Mar. 14, 2011.) (emphasis in the original).

## II

Howard has returned to court, submitting the information requested by the March 14, 2011 order, along with an amended complaint. Because Howard is proceeding pro se, his pleadings must be held "to less stringent standards than formal pleadings drafted by lawyers" and should not be dismissed based on the litigant's "inartful pleading" of the issues until he has had opportunity to offer proof in support of his claims. Haines v. Kerner, 404 U.S. 519, 520 (1972). On the other hand, pro se litigants are expected to respect and comply with court orders, as necessary for effective judicial administration. Ballard v. Carlson, 882 F.2d 93, 95 (4th Cir. 1989) (finding that dismissal was appropriate where pro se litigant was explicitly warned about failure to comply with court order to clarify his complaint in prescribed format). When such litigants fail to follow the directives of a court order, the court may determine whether the circumstances warrant summary dismissal of the case. Id. The Federal Rules of Civil Procedure recognize that courts must have the authority to control litigation before them, and this authority includes the power to order dismissal of an action for failure to comply with court orders. Fed. R. Civ. P. 41(b).

Howard's amended complaint complies with the court's order in some respects. He entitles the document "Amended Complaints" and includes the case number, although he does not list the name of the court or the names of the parties in the heading of the case. He submits his claims, one per page, in a stack of numbered affidavits. He does not, however, number all of

the pages of the complaint, although some of the affidavits include exhibits. Howard also fails to leave one inch of blank space on all sides of the text, instead running his text to within one-eighth of an inch on the sides and bottom of the submitted pages. His formatting makes it difficult for the clerk's office to scan a readable version of the documents into the court's electronic docketing system as required. Most importantly, however, for the reasons stated below, Howard's amended complaint fails to allege facts sufficient to state the elements of any claim actionable under § 1983. On this basis, the court will summarily dismiss the action without prejudice, pursuant to 28 U.S.C. § 1915A(b)(1).

To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). Pursuant to §1915A(b)(1), the court shall dismiss an action filed by a prisoner against government officials at any time as frivolous, malicious or for failure to state a claim upon which relief may be granted. In order to state a claim in any federal civil action, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, __U.S.__, 129 S. Ct. 1937, 1940 (2009). After a review of Howard's allegations as amended, the court concludes that he fails to allege facts stating any plausible claim actionable under § 1983.

### A. Interference with Grievance Procedures

In Affidavit 1, Howard complains that from November 25 until February 24, 2011, the warden limited Howard to filing, at most, one informal inmate complaint per week.[3] He raises a similar complaint as a sub-claim in Affidavit 5 and Affidavit 16 as well, alleging that prison officials interfere with his ability to utilize the administrative remedy procedure by losing or destroying his complaints and grievances. These allegations do not present any claim of constitutional significance, however, because inmates do not have a constitutionally protected right to a grievance procedure or to have officials strictly comply with an existing grievance procedure. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Moreover, Howard does not allege facts indicating that his limited access to grievance procedures prevents him from exercising his First Amendment rights through other avenues. Because Howard's allegations about the grievance procedure do not state any constitutional claim, they are not actionable under § 1983 and must be summarily dismissed, pursuant to § 1915A(b)(1).

### B. Destruction of Property

In Affidavit 2, Howard complains that on November 2, 2010,[4] Sgt. Tonya Phillips randomly destroyed the power cord for his television set and then confiscated the television set itself because it had a nonworking cord. In Affidavits 7 and 9, Howard alleges that after a third

---

[3] Howard also complains that, effective March 11, 2011 through June 9, 2011, the warden has limited him to filing, at most, one informal inmate complaint and one regular grievance. Because Howard's submissions clearly indicate that this limitation was implemented only six days before Howard submitted his amended complaint, any claims regarding this limitation have not been exhausted through the prison grievance procedure as required under 42 U.S.C. § 1997e(a) before Howard can pursue any court action on the issue.

[4] Howard states that the incident occurred on November 2, 2011, but the court assumes he intended to write 2010.

party paid for a replacement power cord for his television, the property control department at Red Onion would not provide it to him, and the television was destroyed. He asserts that Phillips or the state must reimburse him for the cost of the television set or provide him with a new one.

Allegations that prison officials randomly deprived an inmate of his property, whether intentionally or as a result of negligence, do not state any constitutional claim "if a meaningful post-deprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). Inasmuch as plaintiff possesses tort remedies under Virginia state law by which to seek reimbursement for the value of his television, see Virginia Code § 8.01-195.3, it is clear that he cannot prevail in a constitutional claim for the alleged property loss in this case. Therefore, the court will dismiss this claim without prejudice, pursuant to § 1915A(b)(1), as legally frivolous.[5]

### C. Hunger Strike

Howard asserts in Affidavit 3 that on December 13, 2010, prison officials' failure to repair and return his television set "forced" Howard to engage in a "hunger strike." The exact nature of Howard's claim concerning his hunger strike is opaque, at best, but it seems to focus on his being subjected to the prison's hunger strike protocol. Although Howard does not describe the protocol in any detail, it apparently involves 15-minute checks on the inmate's status and not forcing him to eat until medical officials determine that his health is at risk. Howard refers to a previous occasion in 2007 when he had to be hospitalized with kidney failure after suffering

---

[5] Section 1983 was intended to protect only federal rights guaranteed by federal law and not claims that officials have violated state law. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Therefore, Howard's complaints that officials have failed to comply with the grievance procedure or with the property confiscation procedures are not independently actionable under § 1983, and the court declines to exercise supplemental jurisdiction over them in this action. See 28 U.S.C. § 1367(c). All such claims will be dismissed without prejudice accordingly.

some sort of reaction to an antibiotic and a pain medication he was receiving.[6] He alleges telling a nurse in December 2010 that "certain levels [had become] elevated due to the hunger strike protocol," a development that should have notified medical staff that the hunger strike was damaging his kidneys again, but officials nevertheless waited eight and a half days into the hunger strike before ordering medical intervention.

The court cannot find any constitutional claim implicated by these facts. Regardless of Howard's self-serving word choice that defendants' actions "forced" him to stage a hunger strike to protest the loss of his television, Howard alone was responsible for his choice to refuse offered food, for whatever reason. He also remained in control of the strike, and if he believed it was damaging his kidneys, he had the power to start eating again or to request medical treatment. To the extent that he claims the nurse or her superiors in the medical unit should have known and reacted sooner to the medical risks presented by his hunger strike, Howard's allegations state, at most, a claim of medical malpractice. Such claims are not actionable under § 1983.[7] See Estelle v. Gamble, 429 U.S. 97 (1976) (requiring showing of deliberate indifference to inmate's serious medical need to show Eighth Amendment violation). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Id. Howard also alleges no facts indicating that his kidneys were actually harmed by his hunger strike experience or showing

---

[6] Any § 1983 claim that Howard may be seeking to bring concerning his medical problems in 2007 is barred by the applicable statute of limitations. See Shelton v. Angelone, 148 F. Supp.2d 670, 677 (W.D. Va. 2001) (finding that Virginia's two-year statute of limitations for personal injury actions, Va. Code Ann. §8.01-234(A), applies to prisoner §1983 actions), citing Owens v. Okure, 488 U.S. 235, 239-40 (1989); Wilson v. Garcia, 471 U.S. 261 (1985).

[7] To the extent that Howard's allegations about his medical care or implementation of the hunger strike protocol might give rise to some claim under state malpractice laws, such claims are not actionable under § 1983. Wright, 766 F.2d at, 849. Moreover, the court declines to exercise supplemental jurisdiction. § 1367(c).

how he was otherwise injured by the conduct alleged in Affidavit 3. Hence, he fails to show that defendants knew of any serious medical need to which they acted with indifference. The court will dismiss Howard's hunger strike allegations without prejudice, pursuant to § 1915A(b)(1), for failure to state a claim.

**D. Restraint Procedures**

In Affidavit 4, Howard alleges the following sequence of events. On December 18, 2010, after he had missed 17 meals on his hunger strike, officers came into his cell and held him down with a shock shield, which was not activated. They placed him in restraints that were "exceedingly tight." Howard told the officers that lack of food had caused him to pass out. He characterizes their actions as a "physical attack."

Again, the claim that Howard wishes to raise based on these allegations is not clearly stated, despite the court's order directing him that the amended complaint would take the place of his initial filings and needed to allege facts in support of all elements of his claim. The court can only assume that he intends to raise a claim that excessive force was used against him on December 18, 2010.

"After incarceration, only the unnecessary and wanton infliction of pain on prisoners constitutes cruel and unusual punishment" in violation of the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986) (internal quotations omitted). On the other hand, "de minimis uses of physical force" are excluded from constitutional protection, unless they are "of a sort repugnant to the conscience of mankind." Hudson v. McMillian, 503 U.S. 1, 9 (1993) (omitting internal quotations). Therefore, the court must determine "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

Id. at 6. In a two-part inquiry, the court asks whether "the officials acted with a sufficiently culpable state of mind and [whether] the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." Id. at 8 (omitting internal quotations). The extent of the injury the inmate suffered is relevant to both of these determinations: as a factor in determining "whether use of force could plausibly have been thought necessary in a particular situation" and as "some indication of the amount of force applied." Wilkins v. Gaddy, ___ U.S. ___, 130 S. Ct. 1175, 1178 (2010).

Howard's allegations in the amended complaint do not support a reasonable inference that the officers acted out of malice in using the shield and the restraints in removing Howard from his cell. The fact that the restraints felt tight to Howard does not prove that the officers knowingly applied them too tightly. Moreover, as Howard does not allege suffering any injury whatsoever as a result of the officers' conduct, the court cannot find that he has alleged facts demonstrating that their actions were objectively harmful enough to violate constitutional protections. Thus, he fails to state facts on which the court could draw a reasonable inference that the defendants wantonly used unnecessary force for the purpose of causing harm in this situation. Iqbal, 129 S. Ct. at 1940. The court will summarily dismiss the claim presented in Affidavit 4, pursuant to § 1915A(b)(1).

### E. Ambulatory Restraints

Howard alleges in Affidavit 5 another sequence of events that he apparently believes involved excessive force, as follows. On February 28, 2011, while food trays were being distributed in Howard's area, Sgt. Phillips sprayed pepper spray into a cell near an open ice container. Howard believed that this action somehow contaminated his Common Fare diet tray,

so he held the food tray box, demanding to receive a new tray. As "punishment to force [Howard] to submit to their demands," officers placed him in ambulatory restraints without first receiving an authorization for this response from mental health professionals.

Again, Howard makes no clear statement of the type of claim he wishes to bring against the defendants mentioned in this section of his amended complaint. Therefore, the court can only assume that he believes use of ambulatory restraints in this situation constituted excessive force in violation of the Eighth Amendment. The court cannot agree. Howard admits that he "held" the tray slot, trying to make officers do his bidding, instead of obeying their "demands." He also does not allege any injury whatsoever that he suffered as a result of having ambulatory restraints applied. Therefore, he fails to allege facts supporting a reasonable inference that the defendants acted maliciously and sadistically to cause harm. Hudson, 503 U.S. at 6-8. The court will dismiss the ambulatory restraints claim without prejudice, pursuant to § 1915A(b)(1), for failure to state a claim.

### F. Outgoing Mail

In Affidavits 6 and 8, Howard complains about instances of interference with his outgoing mail, as follows. On February 27, 2011, Howard mailed a letter to the Council on American-Islamic Relations in Washington, D.C., asking this organization to provide him with legal representation. The prison floor officer signed for this letter at mail pickup, and it was notarized.[8] The letter allegedly never reached its destination, however. On March 13, 2011, Howard mailed a letter to the Legal Aid Justice Center for the same purpose, and as of March 17,

---

[8] Affidavits 13 and 14 are purported affidavits by the floor officer, stating that he received both letters from Howard.

2011, when he prepared his amended complaint, he had not received a response to that letter. Therefore, Howard states that he has a right to believe that unnamed prison officials at Red Onion are interfering with his legal mail in order to prevent him from obtaining counsel. In Affidavits 11 and 12, Howard alleges that in November 2010, mail room supervisor Teresa Pease "tampered" with a legal packet he mailed to the Council on American-Muslim Relations.

Unreasonable delay in the delivery of mail to inmates or refusal to post, or delay in posting, inmates' outgoing mail may state a cognizable § 1983 claim, absent a showing that such official actions are in furtherance of a legitimate prison security interest. Lewis v. Casey, 518 U.S. 343, 361-62 (1996); Bolding v. Holshouser, 575 F.2d 461, 464-65 (4th Cir. 1978). Where an inmate alleges denial of some item or service related to his ability to access the courts, he must allege facts showing actual injury to his litigation efforts resulting from the denial, namely, that "a nonfrivolous legal claim had been frustrated or was being impeded." Casey, 518 U.S. at 352. State officials cannot be held liable under § 1983 for negligent actions which interfere with an inmate's litigation efforts. Pink v. Lester, 52 F.3d 73, 75 (4th Cir. 1995).

Howard alleges no facts supporting a reasonable inference that any intentional action by any Red Onion official caused the delay or nondelivery of his outgoing mail. Hence, his allegations about his mail in general do not state any actionable claim against the defendant.[9] He also fails to allege that the problems with his legal mail hampered his ability to pursue any viable legal claim. Accordingly, he fails to allege any constitutional deprivation related to his

---

[9] Howard alleges in the amended complaint that he has also had trouble with outgoing personal mail, but states no specific facts about such incidents. Therefore, he fails to plead any actionable claim on this issue. See Iqbal, 129 S. Ct. at 1940.

- 11 -

right to access the courts. Casey. 518 U.S. at 354. The court will summarily dismiss the mail claims accordingly, pursuant to § 1915A(b)(1).

### G. Wrist Brace

In Affidavits 8 and 16, Howard complains that medical staff at Red Onion ordered a wrist brace for him, but then had to return it because it was too small. A larger one was ordered in January 2011. To the extent that Howard is attempting to bring a claim that his course of medical treatment was somehow inadequate, his allegations are insufficient to support a § 1983 claim. Such a claim requires a showing that officials knew that an inmate's medical condition presented a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to address it. See Farmer v. Brennan, 511 U.S. 825, 847 (1994) Estelle v. Gamble, 429 U.S. 97, 104-105 (1976). Although advised to provide specific facts in support of all elements of his claims as stated in the amended complaint, Howard fails to allege any facts showing that he suffered from any medical condition presenting a serious risk of harm without a wrist brace, that specific medical staff knew of this condition, or that they failed to react reasonably to the risk. The court will summarily dismiss Howard's claim concerning the wrist brace order, pursuant to § 1915A(b)(1).

### H. Retaliation

In Affidavit 10, Howard asserts that he fears prison officials at Red Onion will retaliate against him because he has agreed to be part of a class action lawsuit against Red Onion, alleging discriminatory treatment against inmates who have adopted Muslim names. Howard asserts that he legally adopted a Muslim name in March 2010 and that he can show retaliatory actions unidentified officials have taken against him because of the lawsuit on this issue. He states his

belief that if he is not transferred to a prison in the eastern part of Virginia, he will end up in the hospital or dead.

Although advised by court order that his complaint must allege facts in support of each element of his claims, he fails to do so here. He alleges vaguely that he has "been brutally beaten on 3 different occasions," but fails to state any facts about the alleged beatings, when they occurred, who was involved, how he was injured, or what facts he would use to show that he was beaten because of his lawsuit. He also fails to state facts supporting a reasonable inference that any of the defendants named in this lawsuit has taken, or is likely to take, retaliatory action of any kind against him because of the alleged lawsuit or because of his exercise of any other constitutionally protected right. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994) (finding that inmate must present more than conclusory allegations of retaliation). The court will summarily dismiss all claims of retaliation, pursuant to § 1915A(b)(1).

### I. Verbal Harassment by Nursing Staff

In Affidavit 15, Howard alleges that after he filed an inmate complaint form, accusing LPN Rose of making racially derogatory remarks to him during the hunger strike, a supervisory member of the nursing staff called Howard a liar and asserted that Howard's allegations were perjury, for which he could be criminally prosecuted. He is apparently claiming that the nurses' comments somehow violated his constitutional rights. He is mistaken. Allegations of verbal harassment by prison staff fail to state any claim of constitutional significance. Henslee v. Lewis, 153 Fed. App'x 179, 179 (4th Cir. 2005) (citing Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979). Therefore, all such claims will be summarily dismissed, pursuant to § 1915A(b)(1), as frivolous.

## III

For the stated reasons, the court concludes that Howard's amended complaint fails to allege facts stating any actionable claim under § 1983 against the defendants, pursuant to § 1915A(b)(1). The court also declines to exercise supplemental jurisdiction over any possible state law claims arising from his allegations, pursuant to 28 U.S.C. § 1367(c). Therefore, the court will dismiss the entire complaint without prejudice. An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 13th day of April, 2011.

_____
Chief United States District Judge